## Case No. 11,012.

### PERRY et al. v. STARRETT.

[3 Ban. & A. 485; [2] 14 O. G. 599; Fent. Pat. 93.]

Circuit Court, S. D. New York. Oct. 17, 1878.

PATENTS — SUIT FOR INFRINGEMENT — EFFECT OF DECISION OF PATENT OFFICE IN INTERFERENCE PROCEEDINGS—DESIGN—PATENT—SIMILARITY.

1. The complainants obtained a patent for a design for a stove; one Smith, another inventor, subsequently applied for a patent for a similar design. An interference was declared, and Smith was adjudged by the patent office to be the first inventor of the design. Held, that this decision was not conclusive on the complain-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

---

ants, so as to prevent them from bringing a suit for infringement of their patent.

2. Although, in a design patent, certain parts may resemble parts of other patented designs, yet, if the general result is different from anything known or used before, such difference indicates inventive genius and creative skill, and the design may be patentable.

[Cited in Kraus v. Fitzpatrick, 34 Fed. 40; Stearns v. Beard, 46 Fed. 194.]

3. To constitute infringement of a design patent, the designs must be so similar as to appear to ordinary observers to be the same, but need not be so nearly alike as to appear to experts to be the same.

[Cited in Miller v. Smith, 5 Fed. 365; Redway v. Ohio Stove Co., 38 Fed. 583; Ripley v. Elson Glass Co., 49 Fed. 930.]

4. If two designs are substantially similar, the fact that different names or trade marks are or may be used in connection with them will not distinguish them sufficiently.

5. Design patent No. 7,456, granted to John S. Perry, Andrew Dickey and Absalom C. Williams, May 26, 1874, for a design for stoves, held valid.

[This was a bill in equity by John S. Perry and others against George Starrett.]

Samuel A. Duncan, for complainants.

Charles J. Hunt, for defendant.

WHEELER, District Judge. This bill is brought for an alleged infringement of design patent No. 7,456, issued May 26th, 1874, for a design for stoves called the "Argand."

The defences are: want of novelty in the invention patented; that the patent is void because it claims too much; and denial of infringement.

The statute provides, among other things, that any person who by his own industry, genius, efforts and expense, has invented and produced any new and original design for a manufacture, or ornament to be cast on any article of manufacture, the same not having been known or used by others before his invention or production thereof, or patented, or described in any printed publication, may obtain a patent therefor. Act 1870, § 71 [16 Stat. 209]; Rev. St. § 4929.

This patent was issued under this statute, and has five claims. The first is for the form and outline of the parts for a design for a stove; the second, for the ornamentation for a design for a stove; the third, for any one of the plates having the form and outline for a design, all as described and represented; the fourth, for the ornamentation, as a design, for any one of the plates; and the fifth, for the form and outline and ornamentation for a stove, each as represented. The first, second and fifth are the only ones upon which a decree is sought.

It might be questionable whether the first claim could stand for the parts of a design separately, as a design, from its nature, is an entirety, if it is anything. But, however that may be, it is insisted for the orators that the claim is in effect for the form and outline of a design for a stove. The parts together would constitute the whole, and

perhaps it is the same as if the mentioning the parts had been left out. Then it would be for the form and outline of the design. These claims, with the first thus considered, stand as claims for the form and outline and ornamentation, as separate designs, and for them together as one design.

As the novelty of the invention is in issue, it is necessary to ascertain what designs of this sort were in use before it, for it must be new with reference to all others known or used before.

There is controversy as to whether one kind of stoves, as it embodies a design for the form of a stove or the ornaments, was in existence before or not. This controversy is with reference to the Smith stoves, so called, said to have been like defendant's Exhibit 15¹, which, itself, had not then been made, and none like it that had been are shown. Mr. Smith, the inventor of that stove, applied for a patent for his design after the one in suit had been granted, and a question of interference between him and these patentees was raised in the patent office, and decided by the examiner of interferences. In making that decision it was found that Smith was the first inventor of the design he sought a patent for.

It is argued for the defendant, that this finding is conclusive here. But, by the provisions of the statute, it would not be conclusive upon the validity of the Smith patent even, so far as question upon it might arise in court. Rev. St. § 4914. The patent of the orators was not there in controversy. The question to be determined was whether a patent should be issued to Smith. The finding was incidental to that question. And, however it might be as between the orators and Smith, it was not any finding between the parties to this suit. The defendant was not a party there and could not be bound, and such estoppels must be mutual to be operative. If both parties are not bound, neither is.

That a stove of substantially the same construction as Exhibit 15¹ was in existence before, appears upon the evidence beyond any fair doubt. That it had the same ornamentation does not satisfactorily appear. The shape of the shell was probably substantially the same. There may have been slight differences, and may not. The stoves called the "American," and the "Light-House," and the "Oriental" were in existence before.

The ornamentation of the Smith stoves, which were in existence before, is not shown to have been at all like that of the orator's stove, the Argand. Assuming the shape of those Smith stoves to have been like that of Exhibit 15¹, they had not as a whole, the form and outline of the Argand. There are some features of them and of the Argand that are considerably alike. Their legs, ash-pit sections, and lower mica sections, with their rear extensions, and their upper mica sections, except as to the rear extension of that of the Argand, are in shape quite similar. The rest of them are very different from each other. The bases of the Light-House and the Argand, the reservoir sections of the American and the Argand, the tops and urns of the Light-House, the Oriental, and the Argand are all somewhat alike.

Upon these similarities it is argued for the defendant that the patentees have only taken those parts of the other designs and put them together, in mere aggregation, to produce their design, and that in so taking them and putting them together they did not accomplish anything patentable. It is quite clear that any one who should take pages or leaves from several books and put them together into a new book, or take parts of several musical compositions and put them together into a composition by themselves, would not be entitled to a copyright for these productions. Reed v. Carusi (D. Maryland, 1845) [Case No. 11,642]. And if all the patentees did was to take the legs of the Smith stove, the base of the Light-House, the ash-pit and mica sections of the Smith stove, the reservoir and top of the American, and the urn of the Oriental, and join them together, it is also clear that they did nothing entitling themselves to a patent. Binns v. Woodruff [Id. 1,424]; Wooster v. Crane [Id. 18,036]. Or, if they did no more than to join them together with such adaptations to each other as would be made by the exercise of the ordinary skill of workmen in that trade, probably they did not. But the evidence shows that they did much more than either. Although the legs of the Argand and of the Smith stove are cyma reversa in general form, those of the Argand are quite different from the others in proportion and style. The base of the Argand is not exactly like that of the Light-House. The curves of its ash-pit section are different from those of that section of the Smith stove. The lower mica section of the Smith stove is convex below and concave above in outward form, while that of the Argand is slightly convex throughout. The lines and curves of the mica section of the Argand are different from those of the Smith stove, and in the Argand the rear extension, to include the exit-pipe, is carried upward on that section, while in the Smith stove it is not. And the top and the urn of the Argand differ somewhat from those of either the Light-House or the Oriental.

All these parts were made symmetrical of themselves and in respect to each other, and connected together with appropriate devices, and formed into a harmonious whole, in a manner that could not be done without inventive genius and creative skill. The result was different from anything used or known before.

In Gorham Co. v. White, 14 Wall. [81 U. S.] 511, it was held that, to constitute in-

fringement of a design patent, the designs must be so similar as to appear to ordinary observers to be the same, and that they need not be so near alike as to appear to be the same to experts. It would seem to follow that to constitute a new design that would be patentable as such, it must be so different from all others existing before, as to appear to be such to the same class of ordinary observers. Tested by this rule, upon the effect of all the testimony in the case, as well as upon an inspection of the stoves themselves, and considering the Smith stoves to have been in form like Exhibit 15¹, the Argand was new in design in its form and outline. And so of the ornamentation. Well-known devices for ornamenting in different places, upon different articles, were employed; but they were arranged with reference to one another, and upon different parts of the stove with reference to what would be suitable there, so as to produce a new effect. It follows directly that the new form of the stove and new ornamentation upon it together made up a new design for the whole. It was invented and produced by the industry, genius, efforts and expense of the patentees, and according to the statute they were entitled to a patent for the form and ornamentation separately, and for the whole together. If the first claim had stood as a claim for the different parts of the design severally, as described in the specification, there might be a question as to whether some of these parts, by themselves, were not so nearly like the corresponding parts of some of the existing designs as to be substantially the same, and so whether they had not claimed some parts to which they were not entitled. But, upon the construction given to that claim, no such question arises, and it is not shown, in any manner, that they did in any of their claims really claim too much. And, if they did, it does not appear that they would have done so with any wilful default, or intent to defraud or mislead the public, without which the patent would not be absolutely void. Rev. St. § 4916; O'Reilly v. Morse, 15 How. [56 U. S.] 62. Upon these considerations the patent, as to the first, second and fifth claims, appears to be valid.

What is claimed to be an infringement is the sale of stoves called by the name of "Hecla." The question as to this part of the case must be as to the substantial identity of the design of them with that of the Argand, within the rule in Gorham Co. v. White [supra]. The most potent evidence is a comparison of the stoves. In appearance they are substantially alike from top to bottom, and so whether viewed as a whole or section by section. There are minor differences both in form and ornamentation, but the general effect is the same. It requires study of the differences that exist, and fixing them in the mind, to be able to tell one from the other when they are not side by side. They are not only so alike as to deceive ordinary observers, but so as to deceive dealers, large and small, and the ordinary observation of experts, without they go far enough to observe what are really trade-marks. This is not only the result of a comparison of the stoves, but is the effect of the testimony. It is said that they can be distinguished by their names as well as by these marks, and that, therefore, no one would be deceived. This might be true, if the names or trade-marks could always be observed, but they may not be. And, if they should always be, the right to have the products bearing the design distinguished from others is not what is granted by the patent. The patent gives the exclusive right to make, vend and use stoves of that design during the life of the patent. Knowledge of the origin of the patented articles may not be, and probably is not often, the object of the purchaser. The patentees have given the public the benefit of the design, as the fruit of their skill and outlay, and the orators are entitled to a monopoly of the products embodying it during the prescribed time.

Let a decree be entered for an injunction and an account accordingly, with costs.

[See Cases Nos. 11,004 and 11,008.]